PRATHER v. BUTLER.

No. 26367. June 22, 1937.

Rehearing Denied July 13, 1937.

Hudson & Hudson, for plaintiff in error.

Carl H. Livingston, for defendant in error.

PER CURIAM. The plaintiff, Cecelia Butler, brought suit against Russell Prather for damages for personal injuries claimed to have been sustained by plaintiff as a result of an automobile accident on Peoria avenue near Twenty-Second street in the city of Tulsa, Okla. The accident happened about 2 o'clock Monday morning, July 30, 1934. The plaintiff was driving a Ford car on Peoria avenue toward Tulsa, and the defendant was driving a car in the same direction that plaintiff was going. All had been to a dance outside the city limits of Tulsa, and all were returning home about 2 o'clock in the morning. The evidence disclosed that defendant was pulling out of the line of travel and passing many cars; that he drove off the road passing to the left side and pulled his car back; that he ran to the right-hand side of the road going toward Tulsa, striking plaintiff's car in the rear, turning it over two or three times. Plaintiff was thrown out of the car onto the road, breaking her clavicle bone, bruising her back and chest and cutting two gashes on one leg and one on the other. Plaintiff alleges in her petition that said injury was the direct result of the negligent driving of the defendant and the same was not her fault, and asked for judgment for $25,000 actual damages, and $20,000 punitive damages. The defendant in his answer filed a general denial to plaintiff's petition; also pleaded contributory negligence on the part of the plaintiff, and further pleaded settlement and release of the defendant from liability as result of said accident, setting up as Exhibit "A" a release admitted in the evidence to have been signed by the plaintiff, bearing date of July 31, 1934, alleging that said release was obtained for $76.50, which amount, the evidence shows, was paid for doctor's bill and four days' hospital bill.

Plaintiff replied to the answer of defendant, denying the execution of said release, but alleging further that if the same was signed by her, it was signed while she was in the hospital suffering from severe pain and nervous shock caused by her injury, and that due to said pain, nervous condition, and opiates administered to her, she did not have sufficient understanding and mental capacity to know and understand the meaning and purpose of said release obtained by the defendant, and asked that the release be vacated and set aside. This constitutes the issues between the plaintiff and defendant in this case.

In the petition in error defendant sets up 15 assignments of error, but none of the assignments of error are briefed by the defendant except assignments 14 and 15, which deal with instruction 3 of the court. In instruction 3 the court gave the stock instruction on fraud pertaining to obtaining the release pleaded by the defendant. There is no question raised by defendant as to the instruction on fraud being erroneous in not presenting the question of fraud properly, but the question therein raised by the defendant is that the fraud was not raised by the pleadings nor the evidence, and the instruction of the court as to fraud, not being within the issues, confused the jury, and because of that fact, this case should be reversed.

Since this court is of the opinion that an instruction to the jury on an abstract question of law, not within the issues raised by the pleadings, is not a reversible error, unless it confuses the jury, it becomes necessary, for this case, to set out another instruction given in said case, known as instruction 7, in words and figures as follows:

"If you find and believe from the evidence in this case that the plaintiff executed the release introduced in evidence, at a time when she was in possession of her senses and faculties and understood and realized that she was releasing said defendant from all liability on account of her personal injuries, and if you further find that she accepted said check, which has been introduced in evidence, in full payment and settlement of any claim which she might have against said defendant at a time when her physical condition was such that she understood and appreciated the result of her act, your verdict should be for the defendant and you should under such circumstances, disregard any question of the

plaintiff's injuries, and you should fully disregard any question of whether or not defendant was guilty of negligence in the operation of his automobile on the morning of July 30, 1934."

It is easily seen that the foregoing instruction presented the issues as fairly to the jury under the records in this case as the defendant could request. In other words, the jury, being men of sound mind and discretion under our presumption of law, could not be misled as to the right of the defendant under this release, provided there was sufficient evidence to go to the jury on the question of mental incapacity of the plaintiff on July 31, 1934, to understand the import of the release she signed.

The court, in his instruction as to the issues raised by the pleadings, correctly stated the issues, and no objection is raised by the defendant as to that point. In other words, the record shows the court set forth plaintiff's claim, defendant's answer including the release, and plaintiff's reply thereto in avoidance of said release on the grounds of mental incapacity to execute the same. In placing the issues before the jury, there was nothing said as to the plaintiff's raising or pleading fraud.

Plaintiff relies principally upon a decision by this court in the case of St. Louis & S. F. R. Co. v. Bruner, 56 Okla. 682, 156 P. 649. In the Bruner Case the court gave an instruction on the question of fraud and told the jury that if they found from the evidence that the settlement and release was secured by fraud or duress on the part of defendant or its agent, then the release and settlement was void and of no effect, would not be binding upon the plaintiff, and would not be a bar to plaintiff's recovery. There was nothing else set up by Bruner dealing with the setting aside of said settlement further than that the same was obtained by fraud. This case differs from the Bruner Case in that in the Bruner Case the defense to said release was placed entirely upon fraud, and this court held there was no evidence of fraud therein and an instruction by the court on the question of fraud pertaining to avoidance of said release was error and highly prejudicial. But in this case, in the light of the pleadings as outlined by the court and in instruction 7, supra, the rights of the defendant were thoroughly protected under the instruction. The in-

struction was clear and unambiguous, and the jury evidently could not be misled.

With the issues properly presented, the sole question for us to decide is whether or not the giving of an instruction on fraud, not within the issues, constituted prejudicial error, and confused the jury.

The evidence in the Bruner Case, supra, showed that Bruner said he was glad to settle for any amount because he was to blame for the accident.

In this case, the evidence, as disclosed by this record, is very convincing that the defendant was entirely to blame for the accident and injury to the plaintiff. The record shows that the plaintiff was unconscious, and was taken to the Morningside Hospital in Tulsa immediately after the injury on July 30, 1934, between 2 and 3 o'clock a. m. She was given first aid; put in some kind of metal brace for her back and chest, and the cuts and wounds on her leg were treated. The clavicle bone was not reduced nor set on that day. She was administered opiates in the first aid treatment. The insurance agent saw her on the same day, Monday, and apparently made arrangements for settling with her on that day, while she was still suffering with great pain.

The record further shows that the plaintiff was a half-breed Indian girl, 23 years old, and had no relatives at that time living in Tulsa. She had finished only second year in high school, and had no opportunity to call in friends and other people of experience to discuss the settlement with her. She testified that she did not remember making the settlement; did not remember talking to the claim agent further than that someone came to her room and said they wanted to pay her doctor and hospital bill. This was on July 30, 1934. On July 31, 1934, the plaintiff's clavicle bone was reduced and set by the doctor about 10 o'clock in the morning. She was administered opiates at that time to alleviate the pain and deaden her nerves. About two hours after that, the claim agent for the defendant, in company with a lady who handled the credit department of the hospital, came to plaintiff's room. He had a check made out for $76.50, which paid her doctor bill to that date and four days' hospital bill. He had a release in full for the plaintiff to sign. The check was indorsed over to the hospital and handed to the lady who represented the

hospital. If her testimony be believed, plaintiff had no recollection of these transactions and did not recall anything about same except that she remembered someone rousing her in her stupor and telling her to sign some papers to pay her doctor bill.

In the light of extreme negligence of defendant giving rise to this accident, in the light of the verdict of the jury for $4,000, and in the light of the fact that the defendant's representative settled for $76.50 for the injuries plaintiff sustained, and which were not disputed, the evidence is clear that the plaintiff did not understand the nature of her transaction and did not meet the claim agent on equal grounds and on equal circumstances.

It is true this court and all courts encourage the settlement and compromise of differences between citizens of this state, but it is also true that it is the duty of this court to protect against unconscionable contracts with people who are not capable of coping with the situation at the time of the contract. A contract is a meeting of the minds of parties on the subject to be contracted about and by parties capable of understanding the nature of, and the ultimate results thereof, but when a contract is executed under circumstances so extremely unfair both as to the mental condition of the parties and other surrounding circumstances, then the same will be set aside.

This court, in the case of St. L. & S. F. R. Co. v. Nichols, 39 Okla. 523, 136 P. 159, used the following language:

"The jury found under the evidence that the settlement pleaded in defense had been obtained by improper means, at a time when by reason of plaintiff's injuries, and the shock occasioned by the wreck, and the sight and circumstances thereof, plaintiff was not mentally competent to contract relative to so important a matter. * * * The jury had the right to consider all the circumstances surrounding this settlement; the insignificant amount agreed upon; * * * the condition of plaintiff's physical injuries at the time."

This court in the case of Chicago, R. I. & P. Ry. Co. v. Cotton, 62 Okla. 168, 162 P. 763, used the following language:

"It is true, the courts favor compromises and the ending of disputes by agreements fairly and honestly made and reduced to writing, and that ordinarily such contracts, when made, are binding upon all the parties to the same, but it is as much

the duty of the courts to protect the weak, the illiterate and the unwary as it is to enforce written contracts. In order for any contract to be valid, there must be a meeting of the minds, and there should be no misunderstanding or fraudulent practice by either party. The parties should contract on equal terms, and each should understand what was in the mind of the other."

Since the evidence in this case thoroughly establishes the fact, and apparently the jury believed it, that the plaintiff was incapable of entering into a binding contract about her rights on July 31, 1934, in signing said release, then the only question left under the assignments presented on appeal is as to whether or not instruction 3 so confused the jury as to justify this court's calling it a reversible error and reversing this case.

Section 3206, ch. 17, art. 35, O. S. 1931, reads as follows:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

This court has held on numerous occasions that, though an instruction may not be proper from a legal standpoint, it is not reversible error unless the substantial rights of the party complaining were violated. Stekoll v. Abraham, 90 Okla. 218, 217 P. 410; Muskogee Elec. Tr. Co. v. Richards, 97 Okla. 61, 222 P. 265.

In the case of Chickasaw Compress Co. v. Bow, 47 Okla. 576, 149 P. 1166, this court held that the giving of an abstract instruction to a jury was not necessarily erroneous, and the court used this language:

"The giving of an instruction which states a correct principle of law, but which has no application to the issues involved or the proof, will not warrant a reversal of the judgment unless it is apparent that such instruction misled the jury."

To the same effect is the opinion of the Supreme Court of California in the cases of O'Meara v. Haiden et al., 268 P.

334; Gambrel v. Duensing (Cal. App.) 16 P. (2d) 284; Marston v. Pickwick Stages, Inc. (Cal. App.) 248 P. 930, and Lejeune v. General Petroleum Corp. (Cal. App.) 18 P. (2d) 429.

In view of the foregoing authorities, and in the light of the court's statement to the jury of the issues, and in the light of instruction 7, supra, we cannot see how the jury in this case could be misled by instruction 3, even though instruction 3 is considered not raised by the pleadings or the evidence. The settlement in this case, made under the circumstances therein presented, does not meet the approval of a fair-minded person and is subject to criticism.

Finding that the judgment is fair and just in all its phases, and that instruction 3 did not prejudice or mislead the jury, the case is, therefore, affirmed.

The Supreme Court acknowledges the aid of Attorneys A. E. Pearson and H. L. Stuart in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Pearson and approved by Mr. Stuart, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion, as modified, was adopted.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, CORN, and HURST, JJ., concur. BUSBY and GIBSON, JJ., dissent.