2008 OK 53

Beverly SNYDER, in her capacity as Mother and Personal Representative of the Estate of Terri LeAnn Stout, Deceased, Plaintiff/Appellant,

v.

Maldonado Onefre DOMINGUEZ, and Progressive Northern Insurance Company, Defendants/Appellees,

and

Isidro Dominguez, individually and d/b/a Dominguez Trucking, Defendant.

No. 104,345.

Supreme Court of Oklahoma.

May 27, 2008.

Rehearing Denied Jan. 20, 2009.

Regena McNeill Walsh, Peter J. Ram, Beeler, Walsh, & Walsh, PLLC, Oklahoma City, OK, for Plaintiff/Appellant.

Brian J. Goree, Latham, Stall, Wagner, Steele & Lehman, P.C., Tulsa, OK, for Defendants/Appellees.

COLBERT, J.

¶ 1 This matter arises from a fatal collision between a passenger car and a truck on a two-lane highway. Plaintiff Beverly Snyder, in her capacity as the mother of Terri LeAnn Stout, deceased, and the personal representative of her daughter's estate, appealed from the judgment on the jury's verdict in favor of Defendant Maldonado Onefre Dominguez, the driver of the truck. Having previously granted certiorari, we now consider whether the trial court erred when it addressed the possibility of the passenger's contributory negligence in the jury instructions.

**BACKGROUND**

¶ 2 On September 6, 2005, there was a fatal head-on collision between a passenger car and a truck on Highway 412. Terri LeAnn Stout was riding in the car driven by Izora Kraft. They were traveling west from Enid to Woodward. Maldonado Onefre Dominguez was driving the truck, which consisted of a semi-tractor pulling an empty dump trailer. Mr. Dominguez was traveling east to a rock quarry to load the trailer with materials for a job site in Clinton. Highway 412 is a two-lane highway at the point where the accident occurred, with one lane of traffic

on each side. Ms. Kraft was killed instantly and Ms. Stout died shortly afterward.

¶ 3 Plaintiff filed this lawsuit for wrongful death against Mr. Dominguez, Isidro Dominguez, and Progressive Northern Insurance Company.[1] During the trial, Mr. Dominguez testified that he first saw the car as it crested a hill and that it was crossing the center line into the path of his truck. He testified that the car veered so far that the driver's side tires were almost on the white line on the wrong side of the road. Because he could not avoid the car by moving to his right, Mr. Dominguez tried to avoid the collision by engaging the truck's brakes and steering across the center line into the opposing lane. According to Mr. Dominguez, the collision occurred when the car swerved back toward the correct lane at the last moment. The car and truck collided mostly in the car's proper lane of travel, but on or near the center line. There were no other eye witnesses.

¶ 4 The highway patrol officer who investigated the accident concluded that the marks left by the car's wheels at the point of impact indicated that it was crossing the center line from the wrong side of the road when the collision occurred. Based on his investigation, the trooper did not issue a ticket to Mr. Dominguez. Defendant's expert in accident reconstruction also corroborated the truck driver's testimony. Plaintiff's expert in accident reconstruction, however, relied on data stored in the car's "black box" to conclude that the car never crossed the center line. According to Plaintiff's expert, therefore, the collision occurred only because the truck driver crossed into the car's lane. Both experts, however, agreed that the car was probably operating on cruise control, that its speed and engine revolutions did not vary, and that its brakes were never engaged. They also agreed that the truck's brakes were applied before the collision, that both vehicles were in proper working order, and that there was no indication of excessive speed. The record contains no evidence that

1. Because Progressive Northern Insurance Company's liability was dependent upon the driver's liability, the trial court granted its pretrial motion to bifurcate the trial. Plaintiff's claim against Isidro Dominguez was based on the theo-

ry of vicarious liability and the trial court granted his demurrer at the close of Plaintiff's evidence. Plaintiff did not appeal from either of these decisions.

illness, weather, or road condition were factors.

¶ 5 Defendant requested jury instructions on a passenger's contributory negligence. Plaintiff had argued that, even if the truck driver testified truthfully about the car's movements, he did not respond appropriately because he had at least six seconds to either move to the right or come to a complete stop. If so, Defendant countered, the car's passenger also had six seconds to react and should have warned the driver of the car that she was crossing the center line. Plaintiff, however, argued that there is no direct evidence that the passenger was negligent and no evidence of any special circumstances giving rise to a duty to warn. Plaintiff also focused on the point when the truck crossed the center line and asserted that the passenger would have had less than 2 1/2 seconds to respond and warn the driver.

¶ 6 The trial judge concluded that he was legally obligated to instruct the jury on a passenger's duty and contributory negligence, despite acknowledging that there was "no direct proof" that this passenger was negligent. The trial judge also presented the jury with three verdict forms, each addressing the possibility of a finding that the passenger was contributorily negligent. The jury found in Defendant's favor and the trial court entered judgment on the jury's verdict. Plaintiff filed a motion for judgment notwithstanding the verdict or new trial. The trial court denied that motion and Plaintiff appealed.

¶ 7 The Court of Civil Appeals affirmed the trial court. The Court concluded that, even if the trial court erred when it instructed the jury on a passenger's duty and contributory negligence, the error was harmless because the verdict form used by the jury was appropriate only if it found Defendant free of any negligence. Plaintiff filed a petition for certiorari with this Court. That petition was previously granted and is now before the Court for a decision on the substantive issue.

**2.** Plaintiff filed a motion for judgment notwithstanding the verdict or new trial on December 15, 2007, less than ten days after the journal entry was filed, extending the time for appeal. The trial court denied the motion on January 25, 2007, and Plaintiff filed a petition in error to commence this appeal on February 23, 2007. Plaintiff has timely appealed, therefore, from the judgment and the order denying the post-trial motion. Okla. Sup.Ct. Rule 1.22(c), Okla. Stat. tit. 12, ch. 15, app. 1 (2001).

## STANDARD OF REVIEW

¶ 8 Throughout this matter, Plaintiff has raised a single issue: that the trial court erred when it instructed the jury on a passenger's duty and the effect of a passenger's contributory negligence.[2] The power of an appellate court to disturb a jury's verdict on the basis of an error in jury instructions is tightly circumscribed and can be exercised only if the court concludes that the error "has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." Okla. Stat. tit. 20, § 3001.1 (2001); *see also Lierly v. Tidewater Petroleum Corp.*, 2006 OK 47, ¶ 15, 139 P.3d 897, 902. This Court can disturb a jury's verdict only if it concludes that an error in a jury instruction is so pervasive that the instructions as a whole create the "probability that the jury was misled into reaching a result different from that which would have been reached but for the error." *Myers v. Mo. Pac. R.R.*, 2002 OK 60, ¶ 29, 52 P.3d 1014, 1028–29.

## DISCUSSION

¶ 9 Negligence is the "want of ordinary care or skill in the management of [a person's] property or person." Okla. Stat. tit. 76, § 5(a) (2001). Contributory negligence "necessarily presupposes negligence on the part of the defendant" and occurs when a plaintiff's own negligence combines with a defendant's negligence to cause the plaintiff's injury. *Miller v. Price*, 1934 OK 332, ¶ 8, 168 Okla. 452, 33 P.2d 624, 626; *Thomason v. Pilger*, 2005 OK 10, ¶ 10, 112 P.3d 1162, 1166.

¶ 10 Motor vehicle passengers present a special challenge in the context of contributory negligence. Although a driver's negligence cannot be imputed to a passenger, passengers have an independent duty to use ordinary care for their own safety. *Shayler*

*v. West*, 1947 OK 129, ¶ 20, 199 Okla. 386, 185 P.2d 957, 959; *Thomason*, 2005 OK 10, ¶ 10, 112 P.3d at 1166. A passenger's contributory negligence can take the form of active negligence. For example, when a teen-aged driver lost control of his car, the passengers were contributorily negligent because they had been drinking heavily, had teased the newly-licensed designated driver about his cautious driving, and had urged him to drive at high speeds through a neighborhood with winding roads. *Morris v. Sorrells*, 1992 OK 125, 837 P.2d 913.

■■■ ¶ 11 A passenger also may be negligent by failing to act when the circumstances require action. Although a passenger's mere presence in a vehicle is not sufficient to create an issue of contributory negligence, the circumstances may support a reasonable inference that the passenger should have cautioned the driver about the driver's operation of the vehicle or about other dangerous conditions. *Thomason*, 2005 OK 10, ¶¶ 10 & 15, 112 P.3d at 1166 & 1167. "If a passenger has the same opportunity as the driver to observe a dangerous condition, and he fails to warn the driver until it is too late, a jury must decide whether the passenger was guilty of contributory negligence." *Bradshaw v. Fields*, 1977 OK 240, ¶ 10, 572 P.2d 552, 554. If the evidence supports any inference that the passenger should have warned the driver under the circumstances, then the trial judge must instruct the jury on the issue. *Thomason*, 2005 OK 10, ¶¶ 15–16, 112 P.3d at 1167. This can occur when the driver is under some incapacity or driving recklessly and/or when the road conditions create a heightened danger. *Bradshaw*, 1977 OK 240, 572 P.2d 552; *Morris*, 1992 OK 125, ¶ 10, 837 P.2d at 916. The passenger must, however, have a reasonable time to warn the driver. *Mouser v. Talley*, 1962 OK 203, ¶ 13, 375 P.2d 968, 971.

¶ 12 In *Bradshaw*, for example, a contributory negligence instruction was proper where the passenger was seventeen, the driver was only fifteen and unlicensed, there was evidence of speeding, and the passenger did not remonstrate the driver about the license, his speed, or the dangerous intersection. 1977 OK 240, 572 P.2d 552. Similarly, in *Matchen v. McGahey*, a wet road, excess speed, and skidding gave rise to a reasonable inference that the passenger had a heightened duty to warn the driver. 1969 OK 48, 455 P.2d 52. And, a 1938 case provides a classic description of conditions giving rise to a passenger's duty to pay attention and warn:

> The night was dark and foggy, rainy or misty, so that visibility was poor; it was dangerous to proceed at a rate of speed exceeding 20 miles per hour; [the passenger's] car was proceeding at a speed exceeding 20 miles, possibly as much as 55 miles per hour-a "tremendous" speed. The driver of the car had been drinking. With proper headlights the occupants of the car should have seen the truck 200 feet away. The lights, both on the truck and on the car which was struck, were burning, so they could have been seen at a safe distance. The plaintiff did not warn her husband against the speed he was traveling. She was leaning forward over his shoulder talking to him and his companion, and had as clear a view as he had, if she had been looking. She suddenly screamed when she saw they were near the car ahead.

*Stillwater Milling Co. v. Templin*, 1938 OK 203, ¶ 11, 182 Okla. 309, 77 P.2d 732, 734–35.

¶ 13 Oklahoma's Constitution requires that the "defense of contributory negligence . . . shall, in all cases whatsoever, be a question of fact, and shall, at all times be left to the jury." Okla. Const. art. 23, § 6. From its adoption in 1907 until 1934, Oklahoma's courts applied this absolute language literally and instructed juries on contributory negligence whenever a defendant pled it as a defense. In 1934, however, the Supreme Court reexamined the issue and retreated from that absolute application in *Miller v. Price*, 1934 OK 332, 168 Okla. 452, 33 P.2d 624.[3]

---

3. Research has uncovered one other jurisdiction operating under a similar constitutional mandate. Arizona adopted Oklahoma's provision verbatim when it enacted its constitution in 1910. *Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403, 111 P.3d 1003, 1008 ¶ 19 (2005). The Supreme Court of Arizona has rejected the interpretation of Oklahoma's courts and remained

¶ 14 In *Miller*, this Court examined the framers' reasons for including article 23, section 6 in the Constitution. *Id.* ¶ 10, 33 P.2d at 627. The territorial courts had come to treat the defense of contributory negligence as a legal question, where the judge would weigh the evidence and rule on the issue as a matter of law. *Id.* ¶ 11, 33 P.2d at 627. Article 23, section 6 was added to the Constitution to return the fact-finding role to the jury, a "remedial enactment [that] must be given a reasonable construction." *Id.* ¶ 25, 33 P.2d at 629.[4] Article 23, section 6, therefore, is not an affirmative mandate requiring trial courts to give the issue of contributory negligence to the jury regardless of a lack of evidence to support the defense. *Id.*

¶ 15 This is the "minimal evidence" requirement. *Thomason*, 2005 OK 10, ¶ 8, 112 P.3d at 1165–66. In the absence of direct evidence, any inference of contributory negligence necessary to support an instruction must be reasonable. *Carnes v. White*, 1973 OK 60, ¶ 14, 511 P.2d 1101, 1104. If even minimal evidence permits a reasonable inference of contributory negligence, however, the trial judge is required to instruct the jury on the issue. *Thomason*, 2005 OK 10, ¶ 8, 112 P.3d at 1165–66.

¶ 16 When the circumstances do not create a reasonable inference of a requirement for heightened awareness, however, courts have correctly refused to give the instruction. In *Needham v. Harrison*, 1961 OK 176, 363 P.2d 297, the passenger's mere failure to observe another car's approach did not support a contributory negligence instruction where there was no evidence of excess speed, careless driving, bad weather, or any other condition which would have alerted the passenger of the need to take "affirmative action for her own safety." *Id.* ¶¶ 5–6, 363 P.2d at 298; *see also Danner v. Chandler*, 1951 OK 208, 204 Okla. 693, 233 P.2d 953. Indeed, "[w]here the evidence, taken as a whole, does not warrant an instruction on contributory negligence, the giving of the same constitutes reversible error." *Carnes*, 1973 OK 60, ¶ 23, 511 P.2d at 1105; *accord Mouser*, 1962 OK 203, ¶ 9, 375 P.2d at 970.

¶ 17 In the case before the Court today, there is a complete absence of direct evidence that the passenger was negligent. Further, while any number of things could explain the events that led to this fatal collision, any inference that can be drawn from the available evidence would be speculative. The weather was fair and there is no evidence of any mechanical difficulty. There is no evidence that the car's driver was under any preexisting incapacity that should have alerted the passenger to be more vigilant than normal. The traffic was so light that the truck driver was the only eye witness. The only evidence of negligence associated with the car was that it crossed the center line. Even if the car did so, it never swerved sufficiently to affect its speed or engine speed, giving no basis for an inference that a

steadfast in holding that the provision precludes withholding assumption of risk or contributory negligence from the jury. *Id.* at 1009 ¶¶ 25–27.

4. The *Miller* court explained its reasoning and holding in clear terms:

[I]t is apparent that we have approached this intolerable position: That whenever contributory negligence is pleaded it is the duty of the court to instruct the jury thereon, even though there is no evidence whatever presented to support such allegation, or from which contributory negligence may be inferred. We cannot assent to such a doctrine. It was never intended by the framers of the Constitution that said provision should be productive of such a rule of law. The constitutional provision is that the "defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury." Obviously, if there is no defense, there is nothing to submit to a jury. To establish a defense, there must be something more than an allegation in a pleading. If there is any evidence of contributory negligence or from which contributory negligence may be inferred or presumed, it is plain that under proper pleadings it is the duty of the court to submit the issue to the jury. Conversely, if there is no evidence of contributory negligence, or from which contributory negligence may be inferred or presumed, then there is no defense of contributory negligence, and the submission of such issue to the jury will tend to create confusion in the minds of the jury and to obscure the real issues involved. The submission of such issue, under such circumstances, would be contrary to all established rules of procedure and practice. It was not the intention of the framers of the Constitution to confer judicial power on the jury, but rather to emphasize the fact that the jury is the trier of the facts, and that, in so far as contributory negligence and assumption of risk are concerned, the facts upon which said defense are based would be passed upon by a jury without interference on the part of the court.

*Miller v. Price*, 1934 OK 332, ¶ 23, 33 P.2d 624, 628–29 (citation omitted).

change in noise level or position should have alerted the passenger that the car was straying from the correct lane. This situation, therefore, does not rise to the level of minimal evidence required by *Miller* and its progeny. The trial court erred, therefore, in instructing the jury on a passenger's duty and contributory negligence.

¶ 18 The Court of Civil Appeals concluded that any error in instructing the jury was harmless, since the jury used the verdict form that required an absence of negligence on the part of Defendant. We cannot agree. The trial court gave the jury a choice of three verdict forms. Each form discussed the possibility of the passenger's contributory negligence. The jury used the pink verdict form which contained the following instruction:

> If you find the occurrence with which this lawsuit is concerned was directly caused by the contributory negligence of Plaintiff, and not by any negligence on the part of Maldonado Onofre Dominguez, or, if you find that Plaintiff has failed to prove that Maldonado Onofre Dominguez was negligent, then you shall use the Pink Verdict Form and find in favor of Maldonado Onofre Dominguez, the Defendant.

While a careful parsing of this instruction permits an inference that the jury concluded that Defendant was not negligent, it is not the only, or even the most obvious, inference. Further, this Court has held, "if there is no evidence of contributory negligence, or from which [it] may be inferred or presumed, . . . the submission of such issue to the jury will tend to create confusion in the minds of the jury and to obscure the real issues involved." *Miller*, 1934 OK 332, ¶ 23, 33 P.2d at 628–29; *see also Carnes*, 1973 OK 60, ¶ 23, 511 P.2d at 1105; *Mouser*, 1962 OK 203, ¶ 9, 375 P.2d at 970.

¶ 19 This matter has persuaded the Court that it must clarify the nature of a passenger's duty and the nature of the evidence required to create a permissible inference of contributory negligence. This Court has concluded that article 23, section 6, was a remedial enactment intended to correct judicial error and confirm the defense of contributory negligence as a question of fact, not law, and that it had no further meaning. *Miller*, 1934 OK 332, ¶ 28, 33 P.2d at 630. Judgments like the one this Court considers

today demonstrate that the courts of this state are once more reaching the "intolerable position" *Miller* sought to remedy. As this Court did in *Miller*, therefore, we will turn to outside sources to clarify the standard.

¶ 20 The nature of a passenger's duty has changed over the years. A passenger may understandably have had a duty to actively participate in the act of driving in the early years of the previous century. One court has observed that this duty originated in "the days of the horse and buggy" when it was possible for a passenger "to exercise a degree of control over the driver. Traffic was light, the speed was slow and the reins could be taken from the driver with relative ease." *Universal Underwriters Ins. Co. v. Long*, 215 Ill.App.3d 396, 158 Ill.Dec. 891, 574 N.E.2d 1284, 1287 (1991).

¶ 21 Today, however, the realities of modern driving are such that a passenger cannot safely be an active participant under normal circumstances. Although passengers have a duty to use ordinary care for their own safety, there is a limit to the amount of control a passenger can and should exert. *Thomason*, 2005 OK 10, ¶ 10, 112 P.3d at 1166. A passenger's duty is fulfilled under ordinary circumstances by determining, *before becoming a passenger*, whether there are any conditions that warrant a heightened level of responsibility. Having done so, however, passengers should be permitted to relax and look around, read, or even sleep, unless something changes in the interim that would alert a reasonable passenger to exercise greater vigilance.

¶ 22 If there is no evidence of a preexisting condition and no evidence of an intervening change that was sufficiently significant to place a reasonable passenger on alert, there is no evidence of the passenger's contributory negligence. Evidence of negligence on the part of the driver does not support an inference of a passenger's contributory negligence unless the driver's actions were sufficient to timely inform a reasonable passenger that something had changed. *See* Restatement (Second) of Torts, § 495 cmt. c (1965).[5] Therefore, a defendant cannot create an issue of contributory negligence without some evidence of the passenger's actions, notice, or imputed notice *before* the accident. While "[e]ssential facts may be established by circumstantial evidence through permissible inferences drawn

from proven facts, [essential facts may not be established] through inference upon inference nor presumption upon presumption." *Barger v. Mizel*, 1967 OK 38, ¶ 0, 424 P.2d 41, 42 (syl. no. 2 by the Court).

An inference of negligence must be based upon something other than mere conjecture or speculation, and it is not sufficient to introduce evidence of a state of facts simply consistent with or indicating a mere possibility, or which suggests with equal force and leaves fully as reasonable an inference of the nonexistence of negligence. The inference of negligence must be the more probable and more reasonable inference to be drawn from the evidence.

*Lawson v. Anderson & Kerr Drilling Co.*, 1938 OK 273, ¶ 0, 184 Okla. 107, 84 P.2d 1104, 1104 (syl. no. 1 by the Court) (quoted in *Barger*, 1967 OK 38, ¶ 26, 424 P.2d 41, 47). In this case, there is a possibility of the passenger's contributory negligence, but there is an equal possibility that the passenger was not negligent. Without more, the inference of contributory negligence is not permissible or reasonable.

### CONCLUSION

¶ 23 The trial court erred in addressing the possibility of the passenger's contributory negligence in the jury instructions where there was no direct evidence that the passenger was negligent and no evidence leading to a reasonable inference that the passenger was negligent. The trial court further erred, therefore, in denying Plaintiff's motion for a new trial.

5. This Court has frequently drawn on the Restatement (Second) of Torts. It contains a cogent discussion of this issue:

Save in exceptional situations, a guest or passenger in a vehicle is not required to keep a constant lookout or to see to it that he shall be in a condition to do so. Thus, a plaintiff riding in the front seat may take his attention off the road to look at the scenery or may turn around to speak to a friend in the back, or he may go to sleep or read a book, without being guilty of contributory negligence if the driver commits some negligent act which the plaintiff, had he been on the alert, might have had the opportunity to prevent. However, if the plaintiff knows that at a particular point there will be a peculiar danger, which he has no reason to believe that the driver if unaided will perceive, the plaintiff may be negligent if he does not keep himself in a position to call the danger to the attention of the driver. Save under such

**COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT'S JUDGMENT REVERSED; MATTER REMANDED FOR NEW TRIAL.**

CONCUR: EDMONDSON, V.C.J.; OPALA, KAUGER, WATT, COLBERT, REIF, JJ.

DISSENT: WINCHESTER, C.J.; TAYLOR, J.

DISQUALIFIED: HARGRAVE, J.

OPALA, J., with whom KAUGER, J., joins, concurring.

¶ 1 I **welcome** today's **reclarified exposition** of Art. 23, Sec. 6, Okl. Const.,[1] and concur in the court's pronouncement. Writing separately, I add my own gloss upon the critical issues in this case.

¶ 2 The **single norm** of the then-effective common law, which **was excised** from this state's legal system by the adoption of Art. 23, Sec. 6, Okl. Const., is that which conferred upon the trial judge the power to decide alone that a claim must fail as a result of plaintiff's contributory negligence. **That trial judge's power came to be transferred to a jury. This is the sum total of changes effected by the section here under consideration.**

¶ 3 Instructing the jury upon a non-existent issue of fact to be decided constitutes an unauthorized application of judicial force. Settled law eloquently so teaches.[2] The rule **governs us today.** If, as it is the case here, there is no basis for assuming, from the

exceptional circumstances, a plaintiff is entitled to trust the vigilance and skill of his driver unless he knows from past experience, or from the manner in which the car is being driven on the particular trip, that the driver is likely to be inattentive or careless. So too, the plaintiff is not required to keep his eyes constantly on the speedometer to see whether the driver is exceeding the legal speed limit, but he is required to call the attention of the driver to his excessive speed only when the speed is so great that a reasonable man would realize its excessive character.

Restatement (Second) of Torts § 495 cmt. c (1965).

1. Oklahoma's constitution requires that the "defense of contributory negligence ... shall, in all cases whatsoever, be a question of fact, and shall, at all times be left to the jury." Art. 23, § 6, Okl. Const.

proof admitted at trial, the presence of contributory negligence by the plaintiff, the trial court commits error when it makes mention in its jury instructions of that kind of negligence **as though it were tendering an issue for the triers' decision.** Submission of a non-existent defense invites the triers' unnecessary diversion from the real issues in the case. It is manifestly prejudicial to the interests of the plaintiff. This is so because its mere injection into the case telegraphs that the claim is burdened by some legal weakness or defect that is capable of defeating its actionable quality

¶ 4 In sum, the phrase in § 6 which calls for its application to "... all cases whatsoever ..." means that **its command shall govern all cases in which the admitted proof is sufficient to raise an issue submissible for the jury's consideration.**[3]

2. *Miller v. Price,* 1934 OK 332, 168 Okla. 452, 33 P.2d 624, 629.

3. *Thomason v. Pilger,* 2005 OK 10, 112 P.3d 1162, 1167; *Wright v. Erwin,* 1959 OK 216, 346 P.2d 187, 188.